JOURNAL ENTRY AND OPINION.
{¶ 1} On September 12, 2002, the relator, Jerry Moore, commenced this mandamus action against the respondents, the Ohio Adult Parole Authority (hereinafter the "APA") and the Ohio Department of Rehabilitation and Correction. The complaint presents multiple claims arguing that the respondents have a clear, legal duty to release him from prison or in the alternative to accelerate his next parole hearing. For the following reasons, this court grants respondents' motion to dismiss and denies the application for an extraordinary writ.
 {¶ 2} In the underlying case, State of Ohio v. Jerry Moore, Cuyahoga County Common Pleas Court Case No. CR-227207, the grand jury indicted Moore for aggravated murder with a firearm specification. In December 1988, a jury found him guilty of the lesser included offense of murder with the firearm specification. The judge sentenced him to fifteen years to life for the murder charge and three years for the firearm specification, to run consecutively. This court affirmed the convictions and sentences. State v. Moore (Aug. 9 1990), Cuyahoga App. No. 57223.
 {¶ 3} The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondents must have a clear legal duty to perform the requested relief and (3) there must be no adequate remedy at law. State ex rel. Ney v.Niehaus (1987), 33 Ohio St.3d 118, 515 N.E.2d 914. Furthermore, mandamus is not a substitute for appeal. State ex rel. Keenan v. Calabrese
(1994), 69 Ohio St.3d 176, 631 N.E.2d 119; State ex rel. Daggett v.Gessman (1973), 34 Ohio St.2d 55, 295 N.E.2d 659; and State ex rel.Pressley v. Industrial Commission of Ohio (1967), 11 Ohio St.2d 141,228 N.E.2d 631, paragraph three of the syllabus. Thus, mandamus does not lie to correct errors and procedural irregularities in the course of a case. State ex rel. Tommie Jerninghan v. Gaughan (Sept. 26, 1994), Cuyahoga App. No. 67787. Furthermore, if the relator had an adequate remedy, regardless of whether it was used, relief in mandamus is precluded. State ex rel. Tran v. McGrath, 78 Ohio St.3d 45,1997-Ohio-245, 676 N.E.2d 108, and State ex rel. Boardwalk ShoppingCenter, Inc. v. Court of Appeals for Cuyahoga County (1990),56 Ohio St.3d 33, 564 N.E.2d 86. Moreover, mandamus is an extraordinary remedy which is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. State ex rel. Taylor v.Glasser (1977), 50 Ohio St.2d 165, 364 N.E.2d 1; State ex rel. Shafer v.Ohio Turnpike Commission (1953), 159 Ohio St. 581, 113 N.E.2d 14; Stateex rel. Connole v. Cleveland Board of Education (1993), 87 Ohio App.3d 43,621 N.E.2d 850; and State ex rel. Dayton-Oakwood Press v. Dissinger
(1940), 32 Ohio Law Abs. 308.
 {¶ 4} In addition, the court exercises discretion in issuing the writ. In Pressley, the Ohio Supreme Court ruled that "in considering the allowance or denial of the writ of mandamus on the merits, [the court] will exercise sound, legal and judicial discretion based upon all the facts and circumstances in the individual case and the justice to be done." The court elaborated that in exercising that discretion the court should consider "the exigency which calls for the exercise of such discretion, the nature and extent of the wrong or injury which would follow a refusal of the writ, and other facts which have a bearing on the particular case. * * * Among the facts and circumstances which the court will consider are the applicant's rights, the interests of third persons, the importance or unimportance of the case, the applicant's conduct, the equity and justice of the relator's case, public policy and the public's interest, whether the performance of the act by the respondent would give the relator any effective relief, and whether such act would be impossible, illegal, or useless." 11 Ohio St.2d at 161-162.State ex rel. Bennett v. Lime (1978), 55 Ohio St.2d 62, 378 N.E.2d 152;State ex rel. Dollison v. Reddy (1978), 55 Ohio St.2d 59, 378 N.E.2d 150; and State ex rel. Mettler v. Commissioners of Athens County (1941),139 Ohio St. 86, 38 N.E.2d 393.
 {¶ 5} Most of the claims and issues which Moore raises are not remediable in mandamus, because there are or were adequate remedies at law, especially appeal, which Moore has already exercised. First, Moore complains that the prosecutor secured his indictment on perjured testimony.[1] He claims that his search and seizure rights were violated, but does not specify how. He also claims that the indictment was deficient, because, inter alia, at least one material element was omitted. He argues that his conviction is void under double jeopardy, because when the jury found him guilty of the lesser included offense of murder, it must have necessarily first found him not guilty of aggravated murder. Thus, at that moment he claims jeopardy attached and prevented him from being found guilty of murder.[2] Moore further maintains that murder is not a lesser included offense of aggravated murder, and the judge erred in so instructing the jury or in allowing the prosecutor to amend the indictment at trial.[3] He continues that he was tried on charges other than those for which he was extradited. He also intimates that the jury's "acquittal" on the aggravated murder charge proves that the jury found that the necessary mens rea was missing, and thus, the mens rea element must necessarily be missing from the murder charge. Accordingly, the evidence was insufficient to prove that he had the purposeful intent to kill.[4] Alternatively, Moore argues that the conflicting evidence precluded a finding of guilt. He also indicates that the indictment, its "amendment," and the corresponding statutes violated the ex post facto clauses of the Ohio and United States Constitutions. All of these issues could have been raised on appeal; therefore, no relief in mandamus is available for these issues, even if they were meritorious.
 {¶ 6} Moore also endeavors to state a claim in habeas corpus by stating that he should be released from prison because the trial court did not have subject matter jurisdiction. Moore argues that double jeopardy bars his conviction for murder because the indictment was for aggravated murder, not simple murder. Errors regarding double jeopardy, lesser included offenses, and deficiencies in the indictment do not deprive a court of subject matter jurisdiction and certainly do not state claims for habeas corpus relief. As the Ohio Supreme Court ruled in Stateex rel. Hadlock v. McMackin (1991), 61 Ohio St.3d 433, 434, 575 N.E.2d 184: "A defendant may challenge the sufficiency of the indictment only by a direct appeal, and not through habeas corpus." State ex rel. Simpson v.Lazaroff (1996), 75 Ohio St.3d 571, 664 N.E.2d 937. Generally, habeas corpus is not a substitute for appeal and does not provide a remedy for errors or irregularities that may be addressed on appeal. Walker v.Maxwell (1965), 1 Ohio St.2d 136, 205 N.E.2d 394; Smith v. Seidner,78 Ohio St.3d 172, 1997-Ohio-224, 677 N.E.2d 336; In re Piazza (1966),7 Ohio St.2d 102, 218 N.E.2d 459; and Yutze v. Copelan (1923),109 Ohio St. 171, 142 N.E. 33.
 {¶ 7} Moore also argues that the APA is improperly treating him as an aggravated murderer, rather than a simple murderer, for purposes of parole. The APA recently adopted guidelines to promote a more consistent exercise of discretion and to enable fairer and more equitable decision-making without removing the opportunity for consideration of parole eligibility on an individual case basis. The heart of the guidelines is a chart, with offense categories ranging from 1, the least serious, to 13, the most serious, along the vertical axis, and four columns for criminal history/risk evaluation along the horizontal axis.[5] The intersection of the two will show a range of months which the prisoner should serve before being eligible for parole. For example, category 11, murder,[6] and a criminal history/risk factor of 0 or 1 produces a range of 180 to 240 months. The same offense category and a criminal history/risk factor of 6 produces a range from 240 to 300 months. In contrast, category 13, aggravated murder, and a criminal history/risk factor of 0 or 1 produces a range of 300 months to life before parole eligibility applies.
 {¶ 8} Moore's claim is perplexing because he concedes that the APA placed his offense in category 11 and evaluated his criminal history/risk factor at 6. The APA's motion to dismiss confirms that, and Moore never rebutted that allegation. Thus, the APA properly categorized his offense as murder and did not classify him as an aggravated murderer for purposes of parole. This is as the Ohio Supreme Court required in Layne v. OhioAdult Parole Authority, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, in which the court held that the APA "must assign an inmate the offense category score that corresponds to the offense or offenses of conviction."
 {¶ 9} To the extent that Moore misreads the chart, arguing that a convicted murderer may only be given 180 months before being eligible for parole, or that his fifteen years to life sentence with good time must make him eligible for parole at 180 months, or that the range of 240 to 300 months before parole eligibility is the de facto equivalent of treating him as an aggravated murderer, his arguments are unpersuasive. "There is no constitutional or inherent right * * * to be conditionally released before the expiration of a valid sentence." State ex rel. Hattiev. Goldhardt, 69 Ohio St.3d 123, 125, 1994-Ohio-81, 630 N.E.2d 696, citing Greenholtz v. Inmates of Nebraska Penal CorrectionalComplex (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675;State ex rel. Lanham v. Ohio Adult Parole Authority (1997),80 Ohio St.3d 425, 1997-Ohio-104, 687 N.E.2d 283. For Moore, that means that he is not entitled to be released at the end of fifteen years or fifteen years with time off for good behavior. Instead, the APA has wide-ranging discretion in parole matters. It may grant him parole when in its judgment there is reasonable ground to believe that paroling him would further the interests of justice and be consistent with the welfare and security of society. Layne. In the exercise of that discretion, it may consider its guidelines, any circumstances relating to the offense or offenses committed, other crimes that did not result in conviction, the mental and moral qualities and characteristics of an inmate, and any other relevant factors. Hemphill v. Ohio Adult Parole Authority (1991),61 Ohio St.3d 385, 575 N.E.2d 148.
 {¶ 10} Specifically for the case sub judice, the APA has the right to exercise its discretion such that it can keep Moore in prison until he dies. It has no duty to release him at the end of fifteen years or fifteen years minus time off for good behavior. It has properly categorized his offense as murder, the crime for which he was convicted, and has further evaluated his criminal history/risk factor as serious enough to be rated a 6. Thus, under its guidelines it has the right to wait 240 to 300 months before considering him for parole. Moore has no clear, legal right enforceable in mandamus to be considered for parole before that time.
 {¶ 11} Moore also raises the issue of good time. He states the gravamen of this issue as follows: "Now, tell relator where does R.C.2967.19(A) play a role with relator's parole guidelines?" In essence, he is not stating a claim for mandamus but asking for a declaratory judgment on how the provisions for good time relate to the possibility of parole. However, the court of appeals does not have jurisdiction over original actions sounding in declaratory judgment. State ex rel. Hogan v. Ghee,85 Ohio St.3d 150, 1999-Ohio-445, 707 N.E.2d 494; State ex rel. Coyne v.Todia (1989), 45 Ohio St.3d 232, 543 N.E.2d 1271; State ex rel. Neer v.Industrial Commission of Ohio (1978), 53 Ohio St.2d 22, 371 N.E.2d 842; and Dennis Dussell v. Lakewood Police Department, Cuyahoga App. No. 81193, 2002-Ohio-6644.
 {¶ 12} Moore also claims that the parole guidelines are invalid and may not be enforced because the APA did not follow R.C. Chapter 119 in adopting them. Assuming, arguendo, that Moore states an authentic mandamus claim and not a claim for declaratory judgment, it is not well founded. The parole guidelines are not administrative rules and need not be promulgated in accordance with R.C. Chapter 119. Poluka v. Ohio AdultParole Authority, Franklin App. No. 02AP-484, 2003-Ohio-153.
 {¶ 13} To the extent that Moore endeavors to state any other claims, this court, in the exercise of its discretion, denies them. Moore's petition is irregularly written as a complaint, e.g., the "relief sought" section is on page eighteen of a forty-five page petition and is followed by additional arguments designated as "assignments of error." Furthermore, the arguments tend to be rambling and repetitive and plagued by inconsistencies and typographical errors. These factors often make it difficult to discern exactly what Moore is claiming. He has not clearly shown that the APA has the clear, legal duty to release him on parole or even to accelerate his next parole hearing. The thrust of his arguments are claimed errors of law arising from his trial; the APA has no authority to correct such matters, even if they were meritorious.
 {¶ 14} Accordingly, this court grants the respondents' motion to dismiss and denies the application for a writ of mandamus and a writ of habeas corpus. Costs assessed against relator. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
ANN DYKE, P.J. concurs; DIANE KARPINSKI, J. concurs, with separate concurring opinion.
[1] Moore does not identify the perjured evidence which also prevents this court from granting relief. However, at trial he presented an alibi defense. The State, on the other hand, presented multiple witnesses who placed him at the scene of the shooting. These included a dying declaration by the victim that "Jerry shot me," a witness who heard the shots and saw Moore holding a gun immediately afterwards, a witness who heard Moore state his intention to kill the victim, and an expert who identified Moore's fingerprints on glasses and bottles at the murder site.
[2] Moore's reliance on State ex rel. Owens v. Campbell (1971),27 Ohio St.2d 264, 272 N.E.2d 116, overruled on other grounds, State v.Thomas (1980), 61 Ohio St.2d 254, 400 N.E.2d 897, and the supporting cases cited therein, is misplaced. In Owen, the relator faced charges of breaking and entering, assault, and rape. He was tried on the breaking and entering charge first and acquitted. The evidence presented precluded him from then being found guilty on the other charges, and the Ohio Supreme Court issued relief in habeas corpus for his discharge on those other charges. The scenario is dependent upon separate trials, an element missing in the present matter.
[3] Moore's arguments revolving around the notion that murder is not a lesser included offense of aggravated murder are meritless. The Ohio Supreme Court has held clearly that murder is a lesser included offense of aggravated murder. State v. Goodwin (1992), 84 Ohio St.3d 331,703 N.E.2d 1251. In State v. Thornton (Nov. 19, 1999), Montgomery App. No. 17696, the court of appeals explicitly rejected the argument that an indictment for aggravated murder could not be amended under Crim. R. 7(D) to simple murder.
[4] Both aggravated murder and simple murder have the element of purposely causing the death of another. Aggravated murder contains the additional element of prior calculation and design.
[5] The APA actually evaluates the criminal history/risk factor by assigning it a value from 0 to 8. However, the chart distributes this factor over only four columns.
[6] Section 202 of the Guidelines Manual provides that murder is a category 12 offense if the victim is a peace officer, a criminal justice system employee, or less than thirteen years of age. In all other cases, murder is a category 11 offense.